**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 3, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ELOY VELASQUEZ,

      Defendant-Appellant.

No. 06-2087
(D. N.M.)
(D.Ct. No. CR-05-799 JC)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TACHA**, Chief Circuit Judge, and **BARRETT** and **BRORBY**, Senior Circuit Judges.

_____

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is therefore ordered submitted without oral argument.

Appellant Eloy Velasquez pled guilty to two counts of selling five grams or

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). He now appeals his 151-month sentence, contending the district court erred in failing to address his arguments and explain its reasons for sentencing him to 151 months imprisonment and, otherwise, by imposing an unreasonable sentence under 18 U.S.C. § 3553(a). We exercise jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, and affirm Mr. Velasquez's conviction and sentence.

## I. Factual Background

On February 3, 2005, Mr. Velasquez arranged to met his estranged wife and her "nephew" at the Farmer's Market grocery store in Bloomfield, New Mexico, for the purpose of selling them methamphetamine; in making the arrangements for the meeting, Mr. Velasquez indicated they would move to another location after he met them at the Farmer's Market. Unknown to Mr. Velasquez, his wife actually brought an undercover Drug Enforcement Administration (DEA) officer posing as her nephew.

According to the statement of Mr. Velasquez's cousin, Joseph Elmer Lujan, Mr. Velasquez instructed him to go to the Farmer's Market in advance of the meeting and look for a black Suburban, which Mr. Velasquez knew the DEA Region II office used. Mr. Velasquez paid Mr. Lujan one-half gram of methamphetamine for his counter-surveillance. Mr. Lujan's statement was

corroborated by agents who observed Mr. Lujan travel from Mr. Velasquez's apartment to the Farmer's Market fifteen minutes prior to when Mr. Velasquez left the apartment for the meeting, and they later saw Mr. Lujan driving around the area of the Farmer's Market conducting counter-surveillance.

When Mr. Velasquez met his wife and the agent at the Farmer's Market, he instructed them to follow his vehicle, after which he led them to a field outside of town. Mr. Velasquez then sold the agent two ounces of methamphetamine for $2,400 and told the agent he could get him anything he wanted in the future, including cocaine, marijuana, and more methamphetamine, bragging, "We just moved ten pounds to Denver last week." He also told the agent he would charge him $600 per pound for future marijuana purchases. When the agent asked for another ounce of methamphetamine, Mr. Velasquez initially said he could provide it later that day but subsequently contacted his wife and told her he could not retrieve it that day, requesting they conduct the transaction at a later time.

On February 17, 2005, Mr. Velasquez's wife contacted him requesting he sell her "nephew" another three ounces of methamphetamine. That afternoon, Mr. Velasquez met the agent in a parking lot and the agent paid $3,600 for eighty-four grams of methamphetamine. Mr. Velasquez then spoke to the agent about distributing ounce quantities of cocaine for Mr. Velasquez in Colorado. Mr.

Velasquez also told the agent he had moved "kilo" quantities of cocaine and would sell the agent cocaine at $800 to $900 per ounce. They also discussed the agent driving across the border and transporting loads of narcotics; Mr. Velasquez advised he would provide a vehicle and pay the agent between $3,000 and $5,000 per load. At the conclusion of their discussion, Mr. Velasquez told the agent to contact him directly for future transactions.

After Mr. Velasquez's arrest and indictment, he pled guilty to two counts of selling five grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Following his guilty plea, a probation officer prepared a presentence report, calculating Mr. Velasquez's base offense level at thirty-two under United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") § 2D1.1(c)(4), and applying a two-level upward role adjustment under U.S.S.G. § 3B1.1(c) as an organizer, leader, manager, or supervisor. The probation officer based the two-level role adjustment on the fact Mr. Velasquez arranged the time and place of the transactions; negotiated the price for the drugs; advised he could sell the agent cocaine, marijuana, and methamphetamine in the future; provided prices for future purchases; and instructed and hired Mr. Lujan for one-half gram of methamphetamine to conduct counter-surveillance for him at the Farmer's Market. The probation officer concluded Mr. Velasquez met the requirements of § 3B1.1(c) because he was the supplier and dealer; exercised management

responsibility over the drugs; directly benefitted from the profit made; and instructed one participant, Mr. Lujan, to provide counter-surveillance. After applying a three-level downward adjustment for acceptance of responsibility, for a total offense level of thirty-one, and factoring in Mr. Velasquez's criminal history at Category IV, the probation officer calculated his sentencing range at 151 to 188 months imprisonment.

## II. Procedural Background

Mr. Velasquez filed formal written objections to the presentence report, arguing, in part, against the two-level role adjustment. He claimed the fact he was a drug dealer did not qualify him for an enhancement because every drug transaction requires negotiation of the price, arrangement of the time and place of the transaction, and management responsibility over the drugs. Instead, he argued, any management must be over people, and Mr. Lujan was not: 1) an employee or operative of his; 2) under his control or supervision; or 3) part of any organization, but merely a friend who was not present during the drug transactions and whose appearance in the first offense was "very fleeting in nature." He also contended the half gram of methamphetamine provided Mr. Lujan was not a "quid pro quo," as Mr. Lujan merely took advantage of his generosity. He also explained no need existed for Mr. Lujan to provide "counter-surveillance" because Mr. Velasquez had informed his wife the actual transaction

would take place in another location.

In addition to his objection to the role adjustment under § 3B1.1(c), Mr. Velasquez requested a "downward departure and variance" under *United States v. Booker*[1] and 18 U.S.C. § 3553(a) on grounds his actions were motivated by his wife or by a form of "sentencing entrapment,"[2] causing him to: 1) sell larger quantities of methamphetamine than usual at his wife's request; 2) charge less than the going rates for the drugs sold to her "nephew"; and 3) brag or do "puffing" about his other drug deals because he was "simply a guppy pretending to be a whale in order to impress his wife and her 'nephew' ... in hopes of reconciliation." Mr. Velasquez further claimed he acted only as the "go-between" with his supplier and wife.

At the beginning of the sentencing trial, the district court judge stated, "I've read everything you've filed. Is there anything else you want to say?" Mr. Velasquez's counsel argued against the two-level role adjustment, concentrating on the fact Mr. Velasquez only bragged about and participated in large drug deals

---

[1] 543 U.S. 220 (2005).

[2] While Mr. Velasquez explains he raised the issue of "sentencing entrapment" before the district court, nowhere in his brief on appeal does he ask us to consider the issue or does he cite legal or other authority in support of such a contention. For this reason, we decline to consider the issue, other than to note it lacks merit sufficient for resentencing.

because he wanted to impress his wife, and he did not need to hire Mr. Lujan to do counter-surveillance at the Farmer's Market because they moved to a second, secluded area for the actual transaction. In support of these arguments, Mr. Velasquez testified at the sentencing hearing, resulting in the following colloquy on the counter-surveillance issue:

| | |
|---|---|
| Government: | Mr. Velasquez, you met your wife at the Farmer's Market because you wanted to make sure that she wasn't being followed by law enforcement agents before you went to do the deal somewhere else; isn't that right? |
| Mr. Velasquez: | No. That's the only place that – Bloomfield is a small town. That's the only – it's that intersection in town. It's the only big building, really. |
| Government: | So why didn't you just – |
| Court: | Come on. I've been to Bloomfield. Don't give me that malarkey. |
| Mr. Velasquez: | It's the only grocery store there, sir. |
| Court: | Well, there are lots of other places you can meet other than the grocery store. |

Later, when Mr. Velasquez's attorney continued to argue Mr. Velasquez did not supervise Mr. Lujan because he conducted counter-surveillance at the Farmer's Market and not the field where the drug transaction took place, the court countered:

Aren't you missing the point? Mr. Lujan stated that Mr. Velasquez told him to go to the area of the Farmer's Market and instructed him to look around the area. Mr. Lujan stated: ["]He told me to look for

a black Suburban because he knew the DEA Region II office utilized a black Suburban.["] Mr. Lujan then made this statement, "I'm just the eyes." Mr. Lujan, in his statement [said] Mr. Velasquez gave him approximately half a gram of methamphetamine to go to the Farmer's Market and look for the black Suburban.

Again, when defense counsel suggested Mr. Lujan was not being completely truthful about conducting surveillance at the Farmer's Market, and that surveillance would only have made sense if Mr. Lujan had been the "eyes" on the dirt road near where the transaction took place, the district court judge disagreed, stating:

That doesn't make sense to me. I mean, if I'm going to go down some dirt road ... and make the deal, I want to be sure that where I'm going to meet the person, nobody is going to be there to follow me. That's why he is the eyes there. So what you're saying, to me, doesn't really jibe very well.

The judge also observed that surveillance would not be needed on a dirt road in a rural area, because one could easily see a cloud of dust if someone was approaching, and further stated, "[D]oesn't it make sense that you search out first to see where you're going to pick the person up and see if there's anybody there, and then go to the secret place to do it?"

With respect to Mr. Velasquez's argument the circumstances warranted a sentence below the Guidelines range because he was motivated to sell drugs to impress his wife, the following colloquy with the court occurred:

-8-

Defense Counsel: We're not claiming this was somehow against his moral fiber, to sell these drugs. And certainly he did sell drugs to other people. ... And as to what he was saying to his wife, you know, I would just say that when one person is trying to impress or get back together with his wife or in dating situations, people do tend to exaggerate their wealth or their influence. And certainly I think that –

Court: Well, I don't think that I ever did that when I was trying to get back with either of my other two wives. So I'm not sure that's a correct statement, either.

At the conclusion of the sentencing hearing, the district court stated it "reviewed the presentence report factual findings and ha[d] considered the sentencing guideline applications and the factors set forth in 18 [U.S.C. §] 3553(a)(1) through (7)." It then determined the Guidelines sentencing range was 151 to 188 months and sentenced Mr. Velasquez at the low end at 151 months on each count, to run concurrently.

III. Discussion

On appeal, Mr. Velasquez argues his sentence is unreasonable under 18 U.S.C. § 3553(a) because "atypical," "unique," "compelling," or "anomalous" circumstances exist to support a sentence lower than the Guidelines range. According to him, these circumstances arose from his efforts to impress and reconcile with his estranged wife, including the fact his drug offenses "resulted

from his loyalty to his wife and his effort to help her," the drug deals "did not financially benefit him" because he sold the drugs to her "nephew" at cost, and the drug deals "involved a considerably higher drug quantity than he would otherwise have sold." He also maintains his sentence is unreasonable and that compelling circumstances exist for a below-Guidelines sentence based on Mr. Lujan's limited "one-time surveillance" which was "very peripheral [in] nature," making his sentence "overly severe" and "disproportional to the extent of [his] involvement." In conjunction with these arguments, Mr. Velasquez contends the district court committed reversible error because it failed to address his "meritorious argument[s]" and explicitly articulate the § 3553 factors it considered when sentencing him.

We review for reasonableness the sentence imposed and have determined a presumption of reasonableness attaches to a sentence, like here, which is within the correctly-calculated Guidelines range. *See United States v. Kristl*, 437 F.3d 1050, 1053-54 (10th Cir. 2006) (*per curiam*). We require reasonableness in two respects – "the length of the sentence, as well as the *method* by which the sentence was calculated." *Id.* at 1055. If the district court "properly considers the relevant Guidelines range and sentences the defendant within that range, the sentence is presumptively reasonable," but "[t]he defendant may rebut this presumption by demonstrating that the sentence is unreasonable in light of the

other sentencing factors laid out in § 3553(a)." *Id.* In determining whether the district court properly considered the applicable Guidelines, we review its legal conclusions de novo and its factual findings for clear error. *Id.* at 1054.

We have held "[t]here is no question that, in addition to guiding our reasonableness review on appeal, the sentencing factors set forth in 18 U.S.C. § 3553(a) must be considered by the district court itself when imposing a sentence." *United States v. Sanchez-Juarez*, 446 F.3d 1109, 1115 (10th Cir. 2006). When the district court allows a defendant to make an argument that any of these factors warrant a below-Guidelines sentence and then imposes a sentence at the low end of the Guidelines range, we have said this "may fairly be read as a functional rejection of [his] arguments and a denial of his request for a below-Guidelines sentence." *Id.* When addressing a district court's consideration of the § 3553(a) factors, "[w] do not require a ritualistic incantation to establish consideration of a legal issue, nor do we demand that the district court recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider." *United States v. Lopez-Flores*, 444 F.3d 1218, 1222 (10th Cir. 2006) (quotation marks and citation omitted), *petition for cert. filed* (U.S. Jul. 7, 2006) (No. 06-5217). While "we will not demand that the district court recite any magic words" to support its conclusions, neither will we "presume the district court weighed a party's

arguments in light of the § 3553(a) factors where the record provides no indication that it did so and no clear explanation of the sentence imposed." *Sanchez-Juarez*, 446 F.3d at 1115-16 (quotation marks and citations omitted).

> [W]here a defendant has raised a nonfrivolous argument that the § 3553(a) factors warrant a below-Guidelines sentence and has expressly requested such a sentence, we must be able to discern from the record that the sentencing judge did not rest on the guidelines alone, but considered whether the guidelines sentence actually conforms, in the circumstances, to the statutory factors.

*Id.* at 1117 (quotation marks, alterations, and citation omitted). However, "[w]hen the defendant has not raised any substantial contentions concerning non-Guidelines § 3553(a) factors and the district court imposes a sentence within the Guidelines range, our post-*Booker* precedents do not require the court to explain on the record how the § 3553(a) factors justify the sentence." *Lopez-Flores*, 444 F.3d at 1222.

With these principles in mind, we note that, unlike the case in *Sanchez-Juarez*, the district court in this case explicitly stated it considered the factors in § 3553(a)[3] in rendering Mr. Velasquez's sentence. *See Sanchez-*

---

[3] 18 U.S.C. § 3553(a) provides, in part, that the court shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed –
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(continued...)

*Juarez*, 446 F.3d at 1115. Thus, the record provides a clear "indication" it considered the requisite factors in sentencing Mr. Velasquez. *Id.* at 1116.

Nevertheless, Mr. Velasquez contends the district court erred in failing to address his "meritorious argument[s] for a below-Guidelines sentence" and "individually address any of the statutorily enumerated [§ 3553(a)] factors or explain the court's application of them in arriving at the sentence imposed."[4] We disagree. First, as demonstrated by the record, the district court clearly addressed Mr. Velasquez's argument he did not supervise Mr. Lujan. As evidenced by the colloquy at the sentencing hearing, the district court credited Mr. Lujan's statement Mr. Velasquez directed him to provide counter-surveillance at the first location and paid him with drugs, which was corroborated by agents who

---

[3](...continued)
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available; ...
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

[4] Mr. Velasquez did not explain, either at sentencing or on appeal, which of the § 3553(a) factors warrant a below-Guidelines sentence. We assume he is relying on § 3553(a)(1),which requires the district court to look at "the nature and circumstances of the offense."

followed Mr. Lujan to the Farmer's Market and observed him driving around the area. The district court also plainly rejected Mr. Velasquez's contention no counter-surveillance was necessary at the first location when it explained it made more sense to have counter-surveillance at the first location to ensure no one was following the parties to the second location, especially when the second location involved a rural setting where an approaching vehicle could more readily be seen. Under these circumstances, we find the district court sufficiently addressed its reasons for applying a two-level increase under § 3B1.1(c), and its determination is reasonably supported by the record, as Mr. Velasquez clearly gave "some form of direction or supervision to someone subordinate in the criminal activity ...." *United States v. Backas*, 901 F.2d 1528, 1530 (10th Cir. 1990).[5] While Mr. Velasquez contends the district court should have addressed his role adjustment in terms of the factors in § 3553(a) because his sentence was overly severe based on Mr. Lujan's one-time surveillance, his argument involves a specific guideline, § 3B1.1(c), which the district court explicitly addressed and rejected. In so doing, it is clear the district court rejected any argument Mr. Lujan's singular involvement created a circumstance under § 3553(a)(1) warranting a below-Guidelines sentence, and no further explanation by the district court was needed under the circumstances.

---

[5] The Guidelines recommend a two-level increase if Mr. Velasquez was an "organizer, leader, manager, or supervisor" in the criminal activity. *See* U.S.S.G. § 3B1.1(c).

Next, the district court allowed Mr. Velasquez to make his argument that "unique" circumstances warranted a below-Guidelines sentence based on his efforts to reconcile with and impress his wife, as demonstrated by the alleged low cost and large quantity of drugs sold to her "nephew" and Mr. Velasquez's supposed exaggeration about other drug transactions. Thus, when the district court imposed a sentence at the low end of the Guidelines range, it was "a functional rejection of [his] arguments and a denial of his request for a below-Guidelines sentence." *Sanchez-Juarez*, 446 F.3d at 1115. It is also clear Mr. Velasquez did not raise any substantial contentions which would require the district court to explain on the record how the nature and circumstances of the offense, under § 3553(a)(1), justified the sentence imposed. *Lopez-Flores*, 444 F.3d at 1222. This is because Mr. Velasquez has provided no legal or other support, either at the district court level or on appeal, for a below-Guidelines sentence based on one's actions in committing a criminal offense for the purpose of impressing his wife. Like the district court, which considered and obviously rejected this frivolous argument, we find it lacks merit and did not require any further discussion of § 3553(a) factors.

Finally, because the district court properly considered the relevant Guidelines range and sentenced the defendant within that range, the sentence is presumptively reasonable. *See Kristl*, 437 F.3d at 1055. Mr. Velasquez has

-15-

clearly not rebutted this presumption by demonstrating the sentence is unreasonable in light of the sentencing factors in § 3553(a).  *Id.*

IV.  Conclusion

For these reasons, we **AFFIRM** Mr. Velasquez's conviction and sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge