**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 21, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOHN MICHAEL LUNA,

Defendant - Appellant.

No. 06-1332

D. Colo.

(D.C. No. 04-CR-520-EWN)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

John Michael Luna pled guilty to possession of a firearm by a prohibited

person and was sentenced to 70 months imprisonment. He appeals from that

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

sentence, arguing it is unreasonable. We exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and affirm.

## I. Background

A confidential informant told the South Metro Drug Task Force that Luna manufactured and sold methamphetamine, possessed firearms and stored methamphetamine at a storage unit in Denver, Colorado. The Task Force passed this tip onto the Denver Police Department. Police officers stopped Luna's vehicle. Luna waived his *Miranda* rights and gave written consent to search his vehicle, apartment and the storage unit. Luna stated he had drugs for his personal use in his vehicle and apartment and a gun under his bed. Officers seized baggies, vials, a digital scale and other drug paraphernalia from Luna's vehicle. The baggies and vials contained a total of one gram of methamphetamine and twenty-five grams of cocaine. In Luna's apartment, the officers discovered five firearms, including a loaded .40 caliber pistol between the mattress and box spring of Luna's bed, a 9mm pistol, a 20-gauge shotgun and two 12-gauge shotguns. Related to the .40 caliber pistol, the officers found a magazine containing twenty rounds of ammunition, a holster and a pistol case with two laser sights. The officers also discovered a safe in the apartment. Luna's key ring contained a key to the safe. Inside the safe was over $1,000 in cash and sixty-four cold pills containing pseudoephedrine. In the storage unit, officers

found muriatic acid, several cans of Drano fluid and other chemicals used in the manufacturing of methamphetamine.

Luna was indicted for (1) possession of a firearm by a prohibited person, (2) possession with intent to distribute cocaine and (3) possession with intent to distribute methamphetamine. A superseding indictment was filed charging Luna with possession of a firearm by a prohibited person. Luna pled guilty to the superseding indictment. Pursuant to the plea agreement, in exchange for Luna's guilty plea, the government agreed to recommend a three-point downward adjustment for acceptance of responsibility and to dismiss the original indictment.

The plea agreement also contained a section pertaining to Luna's estimated sentence. While both parties agreed the base offense level was 24 and Luna's criminal history category was IV, they disputed the applicability of certain sentencing factors and therefore the estimated guideline range. The government believed a two-level enhancement under USSG §2K2.1(b)(1)(A) was appropriate because Luna possessed between three and seven firearms.[1] It also believed the base offense level should be increased four levels under USSG §2K2.1(b)(5) because Luna possessed a firearm in connection with another felony offense. Applying these enhancements and a three-level downward adjustment for acceptance of responsibility, the government estimated the guideline range as 70-

---

[1] Luna was sentenced pursuant to the 2005 edition of the United States Sentencing Commission Guidelines Manual. All citations to the guidelines in this opinion refer to the 2005 guidelines unless otherwise indicated.

87 months imprisonment.[2] Luna believed neither enhancement applied and anticipated a guideline range of 37-46 months imprisonment.

The probation department prepared a presentence report (PSR). It found Luna's base offense level was 24. It increased the base offense level two levels for possession of multiple firearms under USSG §2K2.1(b)(1)(A) but concluded a four-level enhancement under USSG §2K2.1(b)(5) was inapplicable. While it found there was some indicia Luna was engaged in the manufacture of methamphetamine, it concluded the nexus between the manufacturing and firearms was nebulous. It also determined there was no evidence connecting Luna's possession of the drugs found in his vehicle and the firearms found in his apartment. Applying the two-level enhancement and a three-level downward adjustment for acceptance of responsibility, the probation department calculated an adjusted offense level of 23. It also found Luna's criminal history category was VI, not IV as the parties had anticipated. With an adjusted offense level of 23 and a criminal history category of VI, the probation department determined the guideline range was 92-115 months imprisonment. It also advised that because

---

[2] The government's estimate was incorrect. It was based on an erroneous calculation of the adjusted offense level as 23. Given the government's positions regarding the applicable enhancements, its estimated adjusted offense level should have been 30, resulting in a guideline range of 135-168 months imprisonment. This error does not affect the disposition of this appeal.

Luna was diagnosed with acquired immunodeficiency syndrome (AIDS), a downward departure under USSG §5H1.4 may be warranted.[3]

Luna filed a motion for downward departure on two grounds.[4] First, he claimed a departure was warranted under USSG §4A1.3(b)(1) because his criminal history category over-represented the seriousness of his criminal history. Second, he alleged he was entitled to a downward departure under USSG §5H1.4 based on his having AIDS. Luna also sought a variance under 18 U.S.C. § 3553(a), claiming a five year sentence was sufficient but not greater than necessary to achieve the goals of sentencing.[5]

---

[3] Section 5H1.4 states:

> Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a departure may be warranted. However, an extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

[4] Luna also objected to the possession of multiple firearms enhancement and to the use of his prior Colorado conviction for third degree assault to determine his base offense level. At sentencing, Luna withdrew his objection to the possession of multiple firearms enhancement. As to his objection to the use of his prior third degree assault conviction to calculate his base offense level, Luna recognized it was foreclosed by our decision in *United States v. Paxton*, 422 F.3d 1203, 1205-07 (10th Cir. 2005) (holding a Colorado third degree assault conviction is a "crime of violence" under USSG §2K2.1(a) as defined by USSG §4B1.2). He raised it merely to preserve the issue for further review. These issues are not before us.

[5] A departure occurs "when a court reaches a sentence above or below the recommended Guidelines range through application of Chapters Four or Five of the Sentencing Guidelines." *United States v. Atencio*, 476 F.3d 1099, 1101 n.1

At sentencing, Luna renewed his motion for a downward departure and/or a variance. He claimed a sentence of "about 57 months" was appropriate. (R. Vol. IV at 19.) The government did not oppose the court considering Luna's medical condition and proposed a 78-79 month sentence. The district court adopted the probation department's guideline range calculation. It denied Luna's motion for downward departure under USSG §4A1.3(b)(1). It found Luna "deserve[d] to be in Category VI. That's the most severe criminal history category, and that's his history." (*Id.* at 24.) However, the court found a downward departure was warranted under USSG §5H1.4 based on Luna having AIDS. It concluded a departure of twenty-two months (from the bottom of the guideline range) was appropriate. Declining to vary the sentence any further under the § 3553(a) factors, the court sentenced Luna to 70 months imprisonment. This appeal followed.

## II. Discussion

We review sentences imposed post-*Booker* for reasonableness. *United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006). If the district court has correctly determined the guideline range and the defendant is sentenced within that range, the sentence is entitled to a "rebuttable presumption of reasonableness." *Id.* at 1054. "The defendant may rebut this presumption by

_____

(10th Cir. 2007). A variance occurs "[w]hen a court enhances or detracts from the recommended range through application of § 3553(a) factors." *Id.*

-6-

demonstrating that the sentence is unreasonable in light of the other sentencing factors laid out in § 3553(a)." *Id.* at 1055. Those factors include: the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public, and provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner; pertinent guidelines; pertinent policy statements; the need to avoid unwanted sentence disparities; and the need to provide restitution. 18 U.S.C. § 3553(a).

Luna does not challenge the district court's application of the guidelines or its calculation of the guideline range.[6] Therefore, because he was sentenced within that range, his sentence is entitled to a "rebuttable presumption of reasonableness."[7] *Kristl*, 437 F.3d at 1054. Luna attempts to rebut this

[6] The government argues that to the extent Luna's appeal is construed as a challenge to the district court's refusal to further depart from the guideline range under USSG §5H1.4, we lack jurisdiction. Luna is not challenging the court's downward departure but rather claims his sentence is unreasonable under the 18 U.S.C. § 3553(a) factors. We have jurisdiction. *See United States v. Sanchez-Juarez*, 446 F.3d 1109, 1113-14 (10th Cir. 2006).

[7] Luna argues this rebuttable presumption of reasonableness violates 18 U.S.C. § 3553(a) and is inconsistent with *United States v. Booker*, 543 U.S. 220 (2005). He recognizes, however, that we are bound by our prior precedent "absent en banc reconsideration or a superseding contrary decision by the Supreme Court" and raises the issue only to preserve it for possible further review. *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993). The issue is preserved.

presumption by showing his sentence is unreasonable in light of the § 3553(a) factors. Specifically, he claims the fact he has AIDS and has only several years to live renders his sentence unreasonably long.[8] Given that he is dying of AIDS, Luna asserts (1) his sentence amounts to a greater percentage of his life than similarly situated defendants who do not suffer from a terminal illness and it may in fact amount to a *de facto* life sentence, (2) prison life will undoubtedly be much harder on him than other similarly-sentenced inmates and will likely accelerate his deterioration given he will be more likely to contact an opportunistic infection while in prison, and (3) he poses little threat to the public and therefore there is no need to protect the public from him by keeping him in prison. Luna also emphasizes the non-violent nature of his offense, referring to it as a mere "status crime." (Appellant's Opening Br. at 10.)

Undoubtedly, Luna's medical condition will render prison life more onerous for him than other inmates. It is also possible he will die in prison. However, the district court considered his medical condition and its severity in granting a substantial downward departure. Therefore, Luna's sentence already accounts for the fact he has AIDS. Moreover, the alleged effects prison will have on Luna's

---

[8] According to Dr. David L. Cohn, Associate Director of Denver Public Health and Professor of Medicine in the Infectious Diseases Division of the University of Colorado Health Sciences Center, if Luna receives effective treatment, is able to tolerate his medications and strictly adheres to his prescribed treatment, "he is likely to have some recovery of his immune system and live for several years." (R. Vol. I, Doc. 32, Attachment at 3.)

medical condition would exist even were he to have received the "about 57 month[]" sentence he argued for at sentencing. (R. Vol. IV at 19.) And, whether or not he is imprisoned, life is likely to be more difficult for Luna as a result of his illness. There is also no evidence Luna will not receive the necessary medical treatment during his incarceration. Indeed, given his limited financial resources, he may be more likely to receive the treatment he needs (and adhere to it) while in prison.[9]

Luna's sentence is also reasonable given his extensive criminal history, which is the main reason he received the sentence he did. He has convictions for, *inter alia*, distribution of a controlled substance (LSD), driving while under the influence of alcohol, driving while ability impaired (two convictions), assault, intimidating a witness, harassment, third degree assault and possession with intent to distribute cocaine. As the district court pointed out at sentencing, many of these convictions were not even included in arriving at Luna's criminal history category, which is the highest criminal history category available under the guidelines. Luna also committed the current offense less than two years after he was released from his sentence for possession with intent to distribute cocaine. While Luna claims his illness prevents him from being a serious threat to others and will adequately deter

---

[9] Although Luna's most recent employer, David Montoya of "Trees Be Gone" in Denver, described Luna as an exceptional employee and "the best tree trimmer in Colorado," the PSR indicates Luna has no known current assets or income. (R. Vol. II at 18 (quotations omitted).)

him from future crimes, this claim is belied by the fact he committed the current offense while he was "very sick."[10] (R. Vol. III at 20.)

Lastly, Luna's sentence is reasonable given the nature of his current offense. Luna downplays the seriousness of his offense, emphasizing its non-violent nature. However, his possession of a loaded firearm certainly could have led to violence. Moreover, the police found four other firearms in his apartment and recovered evidence of drug-trafficking and the manufacture of methamphetamine.[11] Thus, Luna's offense was more than a mere status offense.

Luna has failed to rebut the presumption of reasonableness attached to his guideline sentence, and, in any event (without the presumption), the sentence is reasonable. While Luna's medical condition is indeed unfortunate, it does not warrant a lower sentence, which was already the result of a substantial downward departure based on that medical condition.

AFFIRMED.

ENTERED FOR THE COURT

Terrence L. O'Brien
Circuit Judge

---

[10] Luna was not diagnosed with AIDS until he was in custody on the current offense. However, the fact he was "very sick" and still committing crimes demonstrates his having AIDS will not necessarily deter him from future criminal activity. (R. Vol. III at 20.)

[11] We also point out that Luna received a substantial bargain from the plea agreement, in which the government agreed to dismiss the two counts in the original indictment relating to the drug-trafficking evidence.