**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 5, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MIGUEL ANGEL JARRILLO-LUNA,

Defendant - Appellant.

No. 05-4262

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 05-CR-48-TC)**

---

Karin M. Fojtik, Assistant United States Attorney, (and Stephen J. Sorenson, Acting United States Attorney, on the brief), Salt Lake City, Utah, for Plaintiff - Appellee.

Kent R. Hart (and Steven B. Killpack, Federal Public Defender, on the brief), Salt Lake City, Utah, for Defendant - Appellant.

---

Before **KELLY**, **ALARCÓN**,[*] and **HENRY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Defendant-Appellant Miguel Angel Jarrillo-Luna was convicted on a plea

---

[*]The Honorable Arthur L. Alarcón, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

of guilty to one count of illegal reentry by a previously deported alien in violation of 8 U.S.C. § 1326(a), and he was sentenced to 46 months' imprisonment followed by two years' supervised release. He now appeals his sentence, arguing, inter alia, that the district court erred by failing to consider his argument that sentencing disparities resulting from the existence of the fast-track program in some districts–but not the district of Utah–justified a sentence below the range dictated by the United States Sentencing Guidelines. See 18 U.S.C. § 3553(a)(6). We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and affirm.

Background

Mr. Jarrillo is a native of Mexico, but he has lived much of his life in the United States. He first crossed the border at age 12 and remained here illegally until 1998, when, at the age of 27, he was deported following a conviction for trafficking in methamphetamine and marijuana. Barely two months later, Mr. Jarrillo was arrested in Arizona for misdemeanor possession of marijuana and received a citation and fine of $750. Then, in May 2004, Mr. Jarrillo allegedly attempted to sell two Russian assault rifles to an undercover police officer in Ogden City, Utah. He was arrested almost a year later, indicted, and charged with one count of illegally reentering the country. On June 21, 2005, Mr. Jarrillo pled guilty to that charge.

In preparation for sentencing, the Probation Office prepared a Presentence

Investigation Report (PSR). Mr. Jarrillo's base offense level was eight, but his prior felony drug trafficking conviction led to a sixteen-level enhancement. See U.S.S.G. § 2L1.2. With a three-level reduction for acceptance of responsibility, see id. § 3E1.1, Mr. Jarrillo's total offense level was twenty-one. His prior felony conviction and misdemeanor citation earned him four criminal history points, see id. § 4A1.1, leading to a criminal history category of III, see id. ch. 5, pt. A (sentencing table). Accordingly, the PSR determined that the Guideline sentencing range for Mr. Jarrillo was 46 to 57 months' imprisonment followed by 24 to 36 months of supervised release.

Mr. Jarrillo submitted a Sentencing Memorandum asserting three reasons why the district court should impose a sentence below the Guideline range. First, he contended that his illegal reentry "is non-violent, . . . not drug-related . . . [and] is, on some level, understandable" because he has a wife and two young children living in the United States. R. Doc. 18 at 3. He also pointed out that his children have been living with his mother-in-law and will continue to do so as long as both of their parents remain incarcerated. Id. Second, Mr. Jarrillo argued that a sentence within the Guideline range would create "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." See 18 U.S.C. § 3553(a)(6). He noted that he would have been eligible for a further four-level reduction in his offense level if he had been

convicted in a district where the fast-track program[1] was available, and this reduced offense level would have led to a Guideline range of 30 to 37 months' imprisonment. Third, Mr. Jarrillo contended that his criminal history category, as calculated by the PSR, overstated the seriousness of his offenses.

At the sentencing hearing, the district court entertained argument from Mr. Jarrillo's counsel about the disparity issue, and then it sought a response from the government. See Aplt. Br. Att. B at 3:6-25. The court questioned the government about the relevance of United States v. Booker, 543 U.S. 220 (2005), and the indicia of dangerousness arising from Mr. Jarrillo's prior criminal conduct. Id. at 4:9-10, 22-24. After Mr. Jarrillo's counsel responded to the government's arguments, the court asked Mr. Jarrillo if he wished to speak, and he declined. Id. at 6:1-23.

The court sentenced Mr. Jarrillo to 46 months in prison followed by 24

_____

[1] As we recently explained:

> To expedite the handling of large volumes of cases involving persons accused of immigration offenses, certain judicial districts employ fast-track programs. These programs allow defendants to obtain a [reduction] in their offense level under the [Guidelines] in exchange for pleading guilty and waiving their rights to file certain motions and to appeal. Congress authorized these programs in a provision of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (the PROTECT Act). The decision to adopt the program in a district is made by the United States Attorney General and the United States Attorney for the district.

United States v. Martinez-Trujillo, 468 F.3d 1266, 1267 (10th Cir. 2006) (internal citations omitted).

months of supervised release. In so doing, it explained:

> I recognize that the Guidelines are just advisory, and I really think that I'm going to look very carefully at the circumstances of this man and his offense, as [18 U.S.C. §] 3553 requires me to do, I do believe that the Guideline low end [of] 46 months is reasonable.

> And the two things that are most compelling to me, first, the conviction in paragraph 23. I don't know the amount of methamphetamine involved and marijuana. However, it's a large amount. And when I see that there's a ten year prison sentence, although 8.5 were suspended, probably because of the thought that he could be deported, et cetera, it seems to me that we have a man here who is not a small-time dealer.

> Then again after that he clearly was not repentant. He's involved in other controlled substance offenses. And I believe that 46 months is an appropriate sentence.

Id. at 6:24-7:13.

## Discussion

### I. Procedural Reasonableness

In the wake of Booker, we review sentences imposed by the district court for reasonableness. United States v. Sanchez-Juarez, 446 F.3d 1109, 1114 (10th Cir. 2006). "In conducting this review, we consider whether the district court correctly applied the Guidelines and whether the ultimate sentence is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a)." Id. Although a sentence within the Guideline range is presumptively reasonable in terms of its length, Mr. Jarrillo argues that his sentence was procedurally unreasonable because the

- 5 -

district court failed to explain why it rejected his arguments that he should be sentenced below the Guideline range. See id. at 1114-15; see also United States v. Hall, 473 F.3d 1295, 1313-14 (10th Cir. 2007). Mr. Jarrillo failed to object on this basis, but we need not look past the first prong of plain error review because the district court committed no error. See United States v. Lopez-Flores, 444 F.3d 1218, 1222 (10th Cir. 2006).

It is well-established that we do not "demand that the district court recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors [in § 3553(a)] that Congress has instructed it to consider." United States v. Contreras-Martinez, 409 F.3d 1236, 1242 (10th Cir. 2005). However, it is equally clear that, "although the district court is not obligated to expressly weigh on the record each of the factors set out in § 3553(a), it must state its reasons for imposing a given sentence." Sanchez-Juarez, 446 F.3d at 1116 (quotation marks omitted); 18 U.S.C. § 3553(c). We require a statement of reasons because "the court's failure to give reasons for its decision would leave us in a zone of speculation on appellate review." Sanchez-Juarez, 466 F.3d at 1116 (quotation marks omitted); see also Hall, 473 F.3d at 1314.

Undeniably, the district court in this case never said explicitly why it was unconvinced by Mr. Jarrillo's arguments for leniency. Instead, the court stated the two "most compelling" reasons why it chose a sentence of 46 months: first, Mr. Jarrillo's prior drug trafficking crime involved "a large amount" of

methamphetamine and marijuana; and, second, his continued criminal activity following his conviction and deportation showed that he was not repentant. See Aplt. Br. Att. B at 7:4-13.

Mr. Jarrillo argues that this statement of reasons affirmatively justifying a Guideline sentence did not sufficiently address his request for a sentence below the Guideline range. He contends that our holding in Sanchez-Juarez requires explicit consideration of "a nonfrivolous argument that the § 3553(a) factors warrant a below-Guidelines sentence." 446 F.3d at 1117. Like Mr. Jarrillo, the defendant in Sanchez-Juarez was convicted of illegal reentry, and he also received a sixteen-level enhancement for a prior felony. Although the defendant argued that the sixteen-level enhancement was overly severe when considered in light of the actual conduct that resulted in his prior conviction for alien smuggling, the district court "stated no reasons for the sentence it imposed, other than first noting that it had reviewed the PSR's factual findings and considered the Guidelines applications, and then citing [the defendant's] offense conduct." Id. at 1115. We held that this discussion was insufficient and remanded for resentencing. Id. at 1118.

Mr. Jarrillo reads Sanchez-Juarez as indicating that a district court must address each and every argument for leniency that it rejects in arriving at a

reasonable sentence.[2]  Properly understood, however, the case merely stands for

the proposition that a sentencing judge confronted with a nonfrivolous argument

for leniency must somehow indicate that he or she did not "rest on the guidelines

alone, but considered whether the guideline sentence actually conforms, in the

circumstances, to the statutory factors."  Id. at 1117 (quoting United States v.

Cunningham, 429 F.3d 673, 676 (7th Cir. 2005)) (internal modifications omitted);

see also United States v. Cooper, 437 F.3d 324, 329 (3d Cir. 2006).  Accordingly,

we have subsequently noted in an unpublished case that "[e]xplaining why, in

light of the factors, the court rejected a defendant's arguments for a below-

guidelines sentence is one way" the district court can show it considered the §

3553(a) factors.  United States v. Vaca-Perez, 178 F.App'x 841, 843 (10th Cir.

2006) (emphasis added).

　　　We have never held, however, that the district court must list the reasons

why it could have chosen a different sentence and then explain why it rejected

_____

　　　[2]  He also relies upon the Sixth Circuit's holding that "[w]here a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it."  United States v. Richardson, 437 F.3d 550, 553 (6th Cir. 2006).  Following that precedent, the court remanded for resentencing in United States v. Vonner because even if "the district court considered all of Vonner's arguments [for leniency], there is nothing in the record that explains why the district court rejected those arguments."  452 F.3d 560, 569 (6th Cir. 2006).  Notably, however, the Sixth Circuit granted the government's motion for rehearing en banc in Vonner on October 12, 2006.  We do not find Richardson's reasoning persuasive, and we reject Mr. Jarrillo's invitation to follow it.

them.[3]  As noted, the purpose of requiring a statement of reasons is to facilitate meaningful appellate review of the district court's determination that the given sentence is reasonable.  Sanchez-Juarez, 446 F.3d at 1116; Hall, 473 F.3d at 1314. The fact that one sentence is reasonable does not, however, indicate that all other possible sentences are unreasonable.  Indeed, a range of possible sentences might be upheld as reasonable on appeal.  Thus, the district court is not required to convince us that all other sentences are unreasonable or even that the sentence chosen is the best of the reasonable sentences.  To affirm, we must simply be satisfied that the chosen sentence, standing alone, is reasonable.  Booker, 543 U.S. at 261.  Lest any doubt remain about the meaning of Sanchez-Juarez, we hold that a district court's duty to explain why it chose the given sentence does not also require it to explain why it decided against a different sentence.

Applying that principle to the facts of this case, we are confident that the district court discharged its obligation to give reasons for choosing a 46 month sentence.  By looking "very carefully at the circumstances of this man and his offense" and then explaining what it considered "the two things that are most

_____

[3]  Indeed, we recently rejected a similar argument in United States v. Ruiz-Terrazas, —F.3d—, 2007 WL 567034 (10th Cir. 2007).  There, we held that a district court satisfied its duty to give reasons for its sentence by entertaining the defendant's arguments and giving reasons for the sentence imposed, even though the court did not specifically explain why it rejected the defendant's arguments for a below-Guidelines sentence. Id. at *5.  Our decision today embraces an identical understanding of a district court's obligations under Sanchez-Juarez and its progeny.

compelling" from Mr. Jarrillo's past, Aplt. Br. Att. B at 6-7, the district court made clear that it had considered "whether the guideline sentence actually conforms, in the circumstances, to the statutory factors," Sanchez-Juarez, 446 F.3d at 1117. The district court's failure to go further and explain why it found Mr. Jarrillo's three arguments for leniency unpersuasive was therefore not error.

II.    The Substantive Argument

Mr. Jarrillo also argues that, even if the district court was not required to address his request for a below-guidelines sentence, the implicit determination that the fact-track program does not create unwarranted sentencing disparities was erroneous. This argument is meritless. In United States v. Martinez-Trujillo, we made clear that § 3353(a)(6) cannot be read to permit a district court in a non-fast-track jurisdiction to consider what the Guideline range would have been in a fast-track jurisdiction. 468 F.3d 1266, 1268 (10th Cir. 2006). We explained that Congress made the decision to create the fast-track program and entrusted the Executive Branch with the responsibility of deciding where it should be used. Id. Because the statute obviously contemplated that fast-track sentences would not be available in all districts, Congress itself created the fast-track disparity. A disparity enacted by Congress simply cannot be "unwarranted" within the meaning of § 3553(a)(6). Id.

AFFIRMED.