**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 29, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GLENN DELL COOK,

    Defendant - Appellant.

No. 05-2290
(D.C. No. CR-04-2395-BB)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **McWILLIAMS**, and **O'BRIEN**, Circuit Judges.

Defendant-Appellant Glenn Dell Cook appeals from a sentence of 235

months' imprisonment imposed by the district court after he was convicted of

three counts related to the possession and distribution of methamphetamine and

marijuana. Mr. Cook contends that the district court erred in (1) calculating the

base offense level, (2) failing to ascertain whether he discussed the PSR with his

attorney before sentencing, (3) failing to explain its reasons for the sentence

imposed, and (4) refusing to grant a minor role adjustment. Exercising

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

Background

On August 26, 2004, New Mexico State Police officers executed a search warrant on a motel room in Hobbs, New Mexico. Upon entering the room, the officers observed Mr. Cook, Joseph Gilkey, and Darrell Adams attempting to flee through a window; all three were later captured. A search of the room revealed approximately two pounds of marijuana, scales and other drug paraphernalia, and a .45 caliber handgun.

The next day, officers conducted a second search in response to reports of a suspicious person attempting to gain access to the motel room. This time, they discovered sixteen small plastic bags hidden in the air conditioning unit. These bags contained 427.55 grams of a suspicious substance, which was later found to be a mixture containing a total of 236 grams of pure methamphetamine.

On December 1, 2004, a federal grand jury returned a three-count indictment charging Mr. Cook and Mr. Gilkey with: Count I, conspiracy to possess with intent to distribute 50 grams or more of methamphetamine and less than 50 kilograms of marijuana, in violation of 21 U.S.C. § 846; Count II, possession of 50 grams or more of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); and Count III, possession of less than 50 kilograms of marijuana with intent to distribute, also in violation of 21 U.S.C. §

841(a)(1).  After a two-day jury trial in May of 2005, Mr. Cook was convicted on all three counts.

The Probation Office prepared a Presentence Investigation Report (PSR) in advance of sentencing.  The PSR determined that Mr. Cook had a base offense level of 34 and deserved a two-level enhancement because he possessed a dangerous weapon during the commission of a drug trafficking offense.  See U.S.S.G. § 2D1.1.  With a total offense level of 36 and a criminal history category of V, the PSR recommended a Guideline sentencing range of 292 to 365 months' imprisonment.

Mr. Cook filed objections to the PSR's calculation of his base offense level, its recommendation of a two-level enhancement, and its failure to recommend a two-level reduction for his relatively minor role in the offense.  Additionally, he requested a sentence of 120 months' imprisonment in recognition of his child support obligations and the petty nature of his criminal history.

On September 1, 2005, Mr. Cook appeared for sentencing.  The district court asked Mr. Cook's attorney whether he had "reviewed [the PSR] with your client?"  Aplt. App. at 57.  Defense counsel indicated that "We have, Your Honor."  Id.  The court then asked about Mr. Cook's objections to the PSR.  Id.  Defense counsel responded that he wished to withdraw his objection to the base offense level calculation, but he argued his remaining objections.  Id.  The court determined that a two-level enhancement for the possession of a dangerous

weapon was not warranted, but it also refused to grant a two-level reduction for Mr. Cook's role in the offense. Id. at 65-66.

The district court then imposed concurrent sentences of 235 months' imprisonment followed by 60 months of supervised release on Counts I and II and 60 months' imprisonment followed by 24 months of supervised release on Count III. Id. at 67. It explained the reasons why it choose a sentence at the bottom of the Guideline range but declined to impose a below-Guidelines sentence:

> Well, Mr. Cook, I was disappointed to hear that you misled us with regard to your prior criminal record. It makes me much less likely to deviate on that subject. . . . [Y]ou do have prior narcotics violations, and you had a lot of methamphetamine here. Methamphetamine, unfortunately for you, has one of the most stringent standards that Congress has chosen to put the guidelines down for . . . [and] I am inclined to try to follow, to some extent, Congress's views. I think Booker does give me some discretion in this case. I'm not as inclined to exercise that and go out on a limb, as I would be in some [other cases].

> ***

> There's evidence in your PSR that you were involved in a hand-to-hand drug transaction in San Bernadino, California, witnessed by officers. . . . It is in your criminal history, and you've got a lot of methamphetamines [in this case]. Your performance at trial – frankly, you didn't impress me with your sincerity or willingness to get on with your life.

> I am going to take points off for the gun and sentence you at the bottom end. You're still going to be doing an awful lot of time.

Id. at 64-66.

Discussion

I.     Base Offense Level

Mr. Cook first argues that the base offense level for Count I should have been 30, not 34, and that the district court erred in its drug equivalency calculation by multiplying the amount of methamphetamine[1] he conspired to distribute by 20 instead of by 2.  See U.S.S.G. § 2D1.1 cmt. n.10.  Mr. Cook raised this argument in his objections to the PSR but subsequently withdrew it at sentencing.  See Aplt. App. at 57.  As such, he concedes that we must review for plain error.  To prevail under a plain error analysis, Mr. Cook must show (1) an error (2) that is plain (3) that affects substantial rights and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings.  United States v. Olano, 507 U.S. 725, 732 (1993).

The government, on the other hand, argues that plain error review is not warranted because Mr. Cook is challenging the district court's drug quantity calculation, a factual finding.  See United States v. Heredia-Cruz, 328 F.3d 1283, 1288 (10th Cir. 2003) ("Under the plain error standard, [this court] will not

---

[1]  To avoid confusion, the term "methamphetamine" will be used in accordance with its Guideline definition: a mixture or substance containing a detectable amount of d-methamphetamine hydrochloride.  The term "methamphetamine (actual)" will be used, in accordance with its Guideline definition, to refer to the amount of pure d-methamphetamine hydrochloride contained in the mixture or substance.  Thus, Mr. Cook possessed 427.55 grams of methamphetamine, which contained 236 grams of methamphetamine (actual).

review the district court's factual findings relating to sentencing, but will review for particularly egregious or obvious and substantial legal error . . . .") (quoting United States v. Ballard, 16 F.3d 1110, 1114 (10th Cir. 1994)). However, Mr. Cook admits that he possessed "427.55 grams of a mixture or substance containing methamphetamine, [or] 236 grams of actual methamphetamine." Aplt. Br. at 13. His argument thus challenges the district court's application of its drug quantity findings to the Guidelines. Accordingly, Mr. Cook is correct that plain error is the appropriate standard of review.

At the outset, we note that Mr. Cook has only appealed the district court's Guideline calculation with respect to Count I. Given that he received an identical concurrent sentence for Count II, the argument could have been made that any error in the Guideline calculation for Count I was necessarily harmless. See United States v. Riebold, 557 F.2d 697, 705 (10th Cir.), cert. denied 434 U.S. 860 (1977). The government did not make this argument, so we proceed to consider the merits of Mr. Cook's contention.

Mr. Cook was convicted of participating in a conspiracy to possess with intent to distribute two different drugs; therefore, the district court was required to calculate the marijuana equivalent of the methamphetamine he conspired to possess in order to determine the total amount of controlled substances for which he was responsible. The Guidelines' conversion factors are listed in the Drug Equivalency Table in U.S.S.G. § 2D1.1 cmt. n.10. Methamphetamine amounts

are converted as follows:

| | |
|---|---|
| 1 gm of Methamphetamine = | 2kg of marihuana |
| 1 gm of Methamphetamine (Actual) = | 20 kg of marihuana |
| 1 gm of "Ice"[2] = | 20 kg of marihuana |

Id.

Mr. Cook argues that the district court applied the conversion factor for "Ice," which was not appropriate because the methamphetamine involved in his offense did not have a purity of 80% or greater. He contends that the district court should have calculated his base offense level using the conversion factor for methamphetamine (1 gram = 2 kg of marijuana) instead. If the court had done so, he asserts, it would have determined that the 427.55 grams of methamphetamine involved in this offense was equivalent to 855.10 kilograms of marijuana. Thus, Mr. Cook would have been responsible for a total of 856.38 kilograms of marijuana (855.10 + 1.28). This would have translated to a base offense level of 30. See id. § 2D1.1(C)(5) (prescribing a base offense level of 30 for offenses involving "[a]t least 700 KG but less than 1,000 KG of Marihuana").

Although Mr. Cook's Guideline calculations are correct, his argument is not. His assertion that the PSR erroneously assumed that his offense involved Ice rests upon a typographical error in the PSR: "1 gram of methamphetamine (ICE)

---

[2] "'Ice,' for the purposes of this guideline, means a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity." Id. § 2D1.1(c) n.C.

[sic] equals 20 kilograms of marijuana." Aplt. Br. at 6. When Mr. Cook raised this argument in his objections to the PSR, the probation officer responded:

> [T]he 236 grams of methamphetamine is pure or actual methamphetamine that was contained in the mixture weight of 427.55 grams. One (1) gram of methamphetamine (pure or actual) equals 20 kilograms of marijuana. Therefore, 236 grams of methamphetamine (actual) times 20 equals 4,720 kilograms of marijuana, plus the 1.28 kilograms Mr. Cook is held accountable for, makes the total amount 4,721.28 kilograms of marijuana and a base offense level 34. The term "Ice" should have read methamphetamine (actual) and is corrected by way of this addendum.

Aplt. App. at 453 (emphasis added). Aided by this clarification, the district court sentenced Mr. Cook with an accurate understanding of his offense.

Moreover, any error introduced by the mistake in the PSR could not have prejudiced Mr. Cook because the marijuana equivalents for methamphetamine (actual) and Ice are the same. In other words, regardless of whether an offense involves 236 grams of methamphetamine (actual) or 236 grams of Ice, the marijuana equivalent calculated in the PSR (4,720 kg) is correct. The PSR is also correct that, when combined with the 1.28 kilograms of marijuana involved in the offense, the appropriate base offense level is 34. See U.S.S.G. § 2D1.1(C)(3) (prescribing a base offense level of 34 for offenses involving "[a]t least 3,000 KG but less than 10,000 KG of Marihuana").

Nevertheless, Mr. Cook is right that he could also have been sentenced based upon a conversion of the total quantity of methamphetamine involved in the offense. When combined with 1.28 kilograms of marijuana, 427.55 grams of

- 8 -

methamphetamine does, indeed, correspond to a base offense level of 30. See id. § 2D1.1(c)(5). However, the Guidelines instruct the district court that "[i]n the case of a mixture or substance containing . . . methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater." Id. § 2D1.1(c) n.B (emphasis added). Accordingly, the district court correctly applied the greater base offense level–34–dictated by a conversion of the 236 grams of methamphetamine (actual) involved in this case.

Mr. Cook also contends that requiring the district court to apply the drug category that produces the greatest base offense level renders the "methamphetamine" category meaningless unless we interpret the Guidelines such that only a mixture or substance that is 100% pure may qualify as methamphetamine (actual). Any other interpretation, he suggests, would mean that a defendant caught with methamphetamine would always be sentenced based upon the amount of methamphetamine (actual) contained in the mixture or substance. The Assistant United States Attorney ably refuted this contention at oral argument. He offered as an example a defendant responsible for 100 grams of methamphetamine with 5% purity. Using the amount of methamphetamine (actual), 5 grams, the defendant would be responsible for 100 kilograms of marijuana (5 x 20); using the amount of methamphetamine, 100 grams, he would be responsible for 200 kilograms of marijuana (100 x 2). Therefore, the

defendant would be sentenced based on the amount of methamphetamine in his possession. Clearly, then, Mr. Cook is incorrect in suggesting that the "methamphetamine" category is wholly redundant.

II. Compliance With Rule 32(i)(1)(A)

Mr. Cook next argues that the district court failed to comply with the requirement in Fed. R. Crim. P. 32(i)(1)(A) that the sentencing court "must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to that report." He contends that this rule requires the court to address the defendant personally and to ascertain clearly and unambiguously that he has discussed the PSR with his counsel. See Aplt. Br. at 17. Mr. Cook further asserts that "an inquiry by the court in this case was especially crucial considering that the attorney who showed up at sentencing was making his first appearance in the case," and, in so doing, "withdrew an objection that potentially could have saved Defendant 10 years of his life." Id. at 16.

The following colloquy occurred at the sentencing hearing:

THE COURT: Ms. Armijo, have you reviewed the presentence investigation report on behalf of the government?

PROSECUTOR: Yes, Your Honor, I have, and I filed–

THE COURT: A response. And I read it.

PROSECUTOR: –my response to the objections.

THE COURT: All right. Do you have any challenges to any of the factual statements in the report or any of the guideline proposals?

- 10 -

PROSECUTOR: Any challenge to it?

THE COURT: Yes ma'am.

PROSECUTOR: We just disagree with the defense's objections.

THE COURT: Yes ma'am. Mr. Solis, have you reviewed that report with your client?

DEFENSE COUNSEL: We have, Your Honor.

Aplt. App. at 56-57. Because Mr. Cook did not object to the court's alleged non-compliance with Rule 32(i), we review for plain error. We need not look past the first prong of the analysis, however, because the district court did not err.

Our precedent affords "the sentencing judge flexibility in determining that the mandates of Rule 32 were satisfied." United States v. Rangel-Arreola, 991 F.2d 1519, 1525 (10th Cir. 1993). However, this flexibility is not boundless; the district court must verify that the defendant and his attorney "had the opportunity to read and discuss the presentence report." Id. Accordingly, we have found error when the district court's questioning revealed only that defense counsel had reviewed the PSR by himself. Id. at 1526.

Mr. Cook suggests that Rangel-Arreola is factually analogous because, here, "[t]he only inquiry the court made . . . was to counsel, and even that was questionable as to whether the court was asking counsel about the PSR or about the objections previous counsel had filed." Aplt. Br. at 15. He also asks us to follow a line of precedent from the Sixth and Seventh Circuits requiring the

- 11 -

sentencing court to direct a litany of specific questions to the defendant in order to ascertain whether he has discussed the PSR with his attorney.

Both arguments are foreclosed by Rangel-Arreola. There, we held that the district court is not required to address the defendant personally and "may draw reasonable inferences from court documents, the defendant's statements, and counsel's statements in determining whether the defendant and counsel had the opportunity to read and discuss the presentence report." 991 F.2d at 1525. The reasonable inference from the colloquy in this case is that Mr. Cook reviewed the PSR with his counsel; the court asked defense counsel whether he had reviewed the PSR with his client, and defense counsel replied that he had. Rangel-Arreola also expressly rejected the requirement that "the district court . . . ask the defendant the following questions at sentencing: (1) whether the defendant had an opportunity to read the presentence report, (2) whether the defendant and defense counsel discussed the report, and (3) whether the defendant wishes to challenge any facts in the report." Id. (citing United States v. Rone, 743 F.2d 1169, 1174 (7th Cir. 1984)). Accordingly, we must reject Mr. Cook's arguments that the district court failed to fulfill its obligations under Rule 32(i)(1)(A).[3]

---

[3] At the time Rangel-Arreola was decided, the requirement of ascertaining whether the defendant and his attorney discussed the PSR was contained in Fed. R. Crim P. 32(a)(1)(A). Although the requirement is now found in 32(i)(1)(A), the rule's substantive content has not been altered.

III.    Reasons for the Sentence

Mr. Cook also complains that "the district court offered no reasons for the sentence it imposed other than its reference to the PSR's factual findings and the Guidelines, and a passing refusal to grant a variance from the guidelines.  The trial court did not make any reference to the § 3553(a) factors."  Aplt. Br. at 19. Generally, we review sentences for reasonableness.  United States v. Jarrillo-Luna, No. 05-4262, —F.3d—, at 5 (10th Cir. 2007).  However, because Mr. Cook did not object to the district court's perceived failure to give reasons, plain error review is warranted.  United States v. Ruiz-Terrazas, 477 F.3d 1196, 1199 (10th Cir. 2007); United States v. Lopez-Flores, 444 F.3d 1218, 1222 (10th Cir. 2006). Once again, we conclude that the district court did not err.

In United States v. Sanchez-Juarez, we held that "although the district court is not obligated to expressly weigh on the record each of the factors set out in § 3553(a), it must state its reasons for imposing a given sentence."  446 F.3d 1109, 1116 (10th Cir. 2006) (quotation marks omitted); 18 U.S.C. § 3553(c).  We did not, however, "demand that the district court recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors [in § 3553(a)] that Congress has instructed it to consider."  United States v. Contreras-Martinez, 409 F.3d 1236, 1242 (10th Cir. 2005).  Instead, when "a district court imposes a sentence falling within the range suggested by the Guidelines, Section 3553(c) requires the court to provide only a general statement of the reasons for the

imposition of a particular sentence." Ruiz-Terrazas, 477 F.3d at 1199.

Here, the district court gave an ample explanation of its reasons for choosing to sentence Mr. Cook to 235 months' imprisonment. It noted that Mr. Cook had given misleading testimony at trial and apparently lacked remorse. See Aplt. App. at 64. This, the court explained, made it much less inclined to go below the Guideline range. Id. The court further noted that it intended to formulate a sentence that accounted for Congress's view that methamphetamine distributers deserve harsh punishment. Id. Lending further weight to this inclination was Mr. Cook's prior history of drug distribution (which he continued to deny at his sentencing hearing) as well as the significant amount of methamphetamine involved in this case. Id. at 65-66. Together, the court felt that these factors warranted a sentence within the Guideline range. Id. at 66. Nevertheless, the court indicated that a sentence at the bottom of the range was reasonable because "[y]ou're still going to be doing an awful lot of time." Id.

The court's careful consideration of the defendant's demeanor, history, and offense characteristics in light of the statutory scheme and Congressional intent was clearly sufficient to discharge its duty to give reasons for the sentence. We require neither a rote recitation of every § 3553(a) factor nor a complete biography of the defendant for the district court to demonstrate that it considered his individual situation in arriving at a reasonable sentence. See Ruiz-Terrazas, 477 F.3d at 1201. By indicating the facts that it considered most relevant in

sentencing Mr. Cook, the district court adequately discharged its duty to explain itself under § 3553(c). See Jarrillo-Luna, No. 05-4262, at 9 ("By looking 'very carefully at the circumstances of this man and his offense' and then explaining what it considered 'the two things that are most compelling' from Mr. Jarrillo's past, the district court made clear that it had considered whether the guideline sentence actually conforms, in the circumstances, to the statutory factors.") (internal citations omitted). Thus, the district court did not err.

IV.    Minor Role Adjustment

Finally, Mr. Cook contends that the district court erred in failing to apply a two-level reduction to his offense level, pursuant to U.S.S.G. § 3B1.2(b), in recognition of his minor role in the conspiracy. The defendant's role in the offense is a factual finding that we review for clear error. United States v. James, 157 F.3d 1218, 1219 (10th Cir. 1998). Under this standard, we "will not disturb a district court's finding of fact unless it is without factual support in the record, or if after reviewing the evidence we are left with the definite and firm conviction that a mistake has been made." United States v. Santistevan, 39 F.3d 250, 253-54 (10th Cir. 1994). Mr. Cook bears the burden of establishing, by a preponderance of the evidence, that he is entitled to a minor role reduction. Id. at 254.

Pursuant to U.S.S.G. § 3B1.2(b), a defendant may receive a reduction for his minor role in the offense if he was "less culpable than most other participants" in the offense. Id. § 3B1.2 cmt. n.5. Mr. Cook argues that he was less culpable

because he was "clearly subordinate" to Mr. Gilkey, Mr. Gilkey was "the mastermind" of the drug distribution conspiracy, and Mr. Gilkey was responsible for distributing the profits from the enterprise. See Aplt. Br. at 21. In response, the government contends that "Cook's involvement after the drugs were obtained was significant" and he "was an integral part of the conspiracy," noting that Mr. Cook suggested selling the drugs to his contacts in New Mexico because they would pay a higher price, Mr. Cook participated in the transportation of the drugs from California to New Mexico, and Mr. Cook used his contacts to arrange all the drug sales in New Mexico. See Aplee. Br. at 23-24. In light of this conflicting evidence, the district court's factual finding cannot be clearly erroneous.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge