**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 25, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

MARIO GERARDO AYALA-
GARCIA,

     Defendant-Appellant.

No. 07-2166
(D.C. No. 2:07CR00417-001JH)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **EBEL**, and **McCONNELL**, Circuit Judges.

Defendant-Appellant Mario Gerardo Ayala-Garcia ("Ayala") pled guilty to

one count of unlawful reentry of a deported alien previously convicted of an

aggravated felony. See 8 U.S.C. § 1326(a)(1)-(2), (b)(2). The district court

sentenced Ayala to a 46-month term of imprisonment. Ayala appeals, disputing

both the procedural and substantive reasonableness of his sentence. Ayala

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

concedes that the sentencing court properly calculated the advisory guidelines range. But he contends that the court failed during sentencing to address adequately his arguments for a downward variance based on (1) his family circumstances and (2) his actual criminal history (as distinguished from his criminal history category). Additionally, he argues that his sentence is substantively unreasonable in light of those two main arguments. Although we sympathize with Ayala and his family, we cannot conclude that the district court plainly erred at sentencing or that his sentence is substantively unreasonable. Exercising jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291, we affirm.

## I.    Background

Ayala, a Mexican citizen, has lived in the United States since 1996. Alongside two of his brothers, Ayala brawled with a man in Lake County, Illinois, in July 1999. For his role in the donnybrook, a grand jury indicted Ayala on three counts of Aggravated Battery and one count of "Mob Action/Force/2+ Persons."[1] Ayala pled guilty to one count of Aggravated Battery and was sentenced to 100 days in custody and 30 months of probation. On August 19, 2002, Ayala was again arrested on suspicion of aggravated battery. The Information filed against Ayala asserted that he had pushed a female victim to the

---

[1]The Indictment specified that Ayala had struck the man with his fists and with a baseball bat.

ground, fracturing her collarbone.[2] After this second conviction for aggravated battery, Ayala was sentenced to 180 days in custody and 30 months of probation and ordered to pay restitution to the victim. On March 14, 2003, he was deported to Mexico.[3]

In late December 2006, U.S. Border Patrol agents came across Ayala near Lordsburg, New Mexico. Immigration records revealed that Ayala had previously been deported and that he had not been granted permission to reenter the United States. As such, he was indicted for illegally re-entering the United States and eventually pled guilty to the charge.

Ayala's presentencing report ("PSR"), prepared by the U.S. Probation Office[4] and presented to the district court, recommended a base offense level of eight, see U.S.S.G. § 2L1.2(a), and a sixteen-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii) because of Ayala's two previous aggravated battery convictions. The PSR also credited Alvarado for accepting responsibility for his illegal reentry, see U.S.S.G. § 3E1.1, resulting in a three-level reduction of his

---

[2]Ayala tells a different tale about this incident. He claims that the victim, an ex-girlfriend, accosted him at his place of employment. When she tried to slap him, Ayala grabbed her wrist, thereby causing her to lose her balance and fall down.

[3]Despite his deportation, an arrest warrant was issued for Ayala in mid-April 2004; the warrant remained outstanding at the time he was arrested for the instant reentry offense.

[4]The Probation Office prepared the PSR using the 2006 version of the United States Sentencing Guidelines ("U.S.S.G.").

offense level. In computing Ayala's criminal history category, the PSR noted that Ayala committed the reentry offense while under a criminal justice sentence (the arrest warrant issued in April 2004). This tacked two more points on to the four Ayala received for his two aggravated battery convictions. See U.S.S.G. §§ 4A1.1(b) & (d). Ayala's criminal history category of III and offense level of 21 resulted in an advisory guideline sentencing range of 46 to 57 months' imprisonment.

In response to the PSR, Ayala submitted a sentencing memorandum, proposing two main reasons (and several permutations therefrom) for the court to depart or vary downward.[5] First, he asseverated that the PSR's calculation of his criminal history category over-represented the seriousness of his criminal history, warranting a downward departure under U.S.S.G. § 4A1.3.[6] Second, he noted that his spouse and three children, all U.S. citizens who live near Chicago, rely on

---

[5]As to each of his theories, Ayala argued first for a downward departure under the guidelines and then, alternatively, for a variance under the 18 U.S.C. § 3553(a) sentencing factors.

[6]In relevant part, § 4A1.3(b) provides,
> If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

U.S.S.G. § 4A1.3(b)(1).

him for support. Ayala claimed that this situation is extraordinary and counseled that a decision to ignore U.S.S.G. § 5H1.6 was in order.[7]

At his May 31, 2007 sentencing hearing, Ayala reiterated his sentencing memorandum's arguments. He did not, however, object to the PSR's statement of the facts. After hearing argument, the judge decided on a 46-month sentence. "Looking at the 16 level increase," the court concluded that the "the underlying felonies" were properly counted. And although the court was "sympathetic to [Ayala's] family circumstances," it did not "see that those facts really – that his family circumstances, that really justifies a variance." The court then noted that, "[w]ith respect to the 3553 factors, again, I find that this is a reasonable sentence, again, given the history." Lastly, the court asked if "there [was] any reason that the sentence should not be imposed as I've stated it." Ayala's counsel responded: "No, Your Honor, not besides what I've already set out in my memorandum and motion." Ayala timely appealed his sentence.

## II. Discussion

We review a challenge to the sentence imposed by the district court for its "reasonableness," United States v. Booker, 543 U.S. 220, 261-62 (2005); United States v. Kristl, 437 F.3d 1050, 1053 (10th Cir. 2006) (per curiam), considering both the procedural and substantive reasonableness of the sentence, United States

[7]This guideline provides that "[i]n sentencing a defendant . . . family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6.

v. Cage, 451 F.3d 585, 591 (10th Cir. 2006).  Accordingly, we must consider

"both the reasonableness of the length of the sentence, as well as the method by

which the sentence was calculated."  United States v. Cereceres-Zavala, 499 F.3d

1211, 1216 (10th Cir. 2007) (quoting Kristl, 437 F.3d at 1055).  Our procedural

review also encompasses challenges to the district court's explanation of its

reasons for imposing a particular sentence.  See id. at 1216.  We now endeavor to

untangle the procedural threads of Ayala's argument from the substantive threads.

## A. Procedural Reasonableness

As noted, Ayala "does not challenge the advisory Guideline sentence

calculation."  Instead, his procedural objections stem from the district court's

failure to advert to two of his arguments for a downward variance during the

sentencing hearing.  The court's failure to memorialize its assessment of his

arguments, according to Ayala, belies its failure to consider those arguments in

light of 18 U.S.C. § 3553(a).  We disagree.

Under 18 U.S.C. § 3553(c), a sentencing court must "state in open court the

reasons for its imposition of the particular sentence."  We have interpreted §

3553(c) to require only a "general statement noting the appropriate guideline

range and how it was calculated."  United States v. Ruiz-Terrazas, 477 F.3d 1196,

1202 (10th Cir. 2007) (quoting United States v. Lopez-Flores, 444 F.3d 1218,

1222 (10th Cir. 2006)).  As such, we do not demand any "ritualistic incantation to

establish consideration of a legal issue."  Id.  Rather, where the district court

entertained written and oral argument, we understand the court's decision to impose a within-guidelines sentence "as a functional rejection" of arguments to vary downward. United States v. Sanchez-Juarez, 446 F.3d 1109, 1115 (10th Cir. 2006).

Moreover, we review for plain error "unpreserved challenges to the method by which the district court arrived at a sentence, including arguments that the sentencing court failed to explain adequately the sentence imposed under the statutory factors." United States v. Romero, 491 F.3d 1173, 1177 (10th Cir. 2007) (emphasis added). After laying out the sentence it had settled on, the district court asked the parties to speak now regarding any reasons not to impose the proposed sentence. Ayala's counsel referred again to the sentencing memorandum's objections, but did not object to the court's explanation of its reasons for deciding on a 46-month sentence.[8] Thus, Ayala did not preserve the procedural objections he now places before this court; we will review those objections only for the presence of plain error.

"We find plain error only when there is (1) error, (2) that is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness,

_____

[8]Had counsel done so, the court could have "correct[ed] a failure to consider those factors or . . . state[d] affirmatively that the factors had been considered." Romero, 491 F.3d at 1177 (quoting Lopez-Flores, 444 F.3d at 1221).

integrity, or public reputation of judicial proceedings." <u>Cereceres-Zavala</u>, 499 F.3d at 1217 (quoting <u>Romero</u>, 491 F.3d at 1178).

Here, we need not venture beyond the first prong because we see no error in the sentencing court's "general statement" supporting the 46-month sentence. Ayala first protests that the district court did not address adequately his contention that his family circumstances are extraordinary enough to warrant a downward variance. However, as Ayala concedes, the court noted that it was "sympathetic to his family circumstances" but did not see "that those facts – really that his family circumstances, that really justifies a variance." Similarly, after referencing the § 3553(a) factors, the court reiterated that it "underst[ood], again, why the defendant came to this country" but ultimately concluded that the 'sentence is a reasonable sentence." This assessment of the situation satisfies § 3553(c) under our precedents. The court did not err in this regard.

Second, Ayala suggests that the sentencing court completely ignored his argument derived from U.S.S.G. § 4A1.3. Just minutes prior to imposing the sentence during the sentencing hearing, the court listened to Ayala's counsel submit that "given the lenient nature of the sentence [sic] that he received for those two convictions and the facts underlying those convictions, that a criminal history category of II is more appropriate . . . ." Yet, as Ayala highlights, the court did not specifically touch on this argument while justifying the sentence imposed.

Nevertheless, we do not necessitate a "ritualistic incantation" from the district court to assure us that the court has done its duty. Ruiz-Terrazas, 477 F.3d at 1202. Nor do we require the sentencing court to address expressly each argument put forth by the defendant. See Cereceres-Zavala, 499 F.3d at 1213, 1217-18; United States v. Jarrillo-Luna, 478 F.3d 1226, 1230 (10th Cir. 2007). Here, the court heard argument, stated that it had considered Ayala's sentencing memorandum, referenced the advisory guidelines range and the § 3553(a) factors, and imposed sentence. While a particularized take on Ayala's argument might have been preferable, we do not mandate such an assessment where the court has opted for a sentence within the guidelines range. See Ruiz-Terrazas, 477 F.3d at 1199-1201; see also Rita v. United States, 127 S. Ct. 2456, 2468 (2007). As such, the court did not err and we discern no plain procedural error under § 3553(c).[9]

**B. Substantive Reasonableness**

Ayala advances the same arguments on the substantive side: his family circumstances are so extraordinary and his criminal history so overstated that his sentence is unreasonable. Again, we disagree.

---

[9]Even if we were to assume that the sentencing court erred by failing to articulate its reasons for rejecting Ayala's arguments, "any such deficiency [in the court's assessment of the defendant's arguments during sentencing] would not affect the outcome of this particular case." See Ruiz-Terrazas, 477 F.3d at 1203 (stating, in dicta, that even if the district court had committed § 3553(c) error that the error did not meet third prong of plain error test). Thus, under the plain error standard of review, our ultimate conclusion would not be cast into doubt.

"A substantively reasonable sentence ultimately reflects the gravity of the crime and the § 3553(a) factors as applied to the case."  United States v. Atencio, 476 F.3d 1099, 1102 (10th Cir. 2007).  Accordingly, we must simply ask whether the sentence is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a)."  Sanchez-Juarez, 446 F.3d at 1114.  We presume the sentence is reasonable if it falls within the guidelines range, but note that the defendant may rebut this presumption by demonstrating that the sentence is unreasonable in light of the § 3553(a) factors.  Kristl, 437 F.3d at 1054.[10]

Ayala argues, primarily under 18 U.S.C. § 3553(a)(1), that the sentencing court should have varied downward because his prior offenses were relatively less serious than the typical offenses that give rise to a sixteen-level enhancement or a criminal history category of III.  The PSR's statement of the facts, to which Ayala did not object, provides ample evidence to the contrary.  See United States v. Wilken, 498 F.3d 1160, 1169 (10th Cir. 2007) (quoting United States v. Keifer, 198 F.3d 798, 800 (10th Cir. 1999) ("At sentencing, the district court may rely on facts stated in the [PSR] unless the defendant objected to them.").

Ayala argues that his first aggravated battery conviction stemmed from a situation where he had merely "slapped" another man.  Yet the PSR indicates that he "slapped" the man with a baseball bat.  While the PSR also offers some

---

[10]We may do so because the sentence rests on the reasoned judgment of both the U.S. Sentencing Commission–as incorporated into the sentencing guidelines–and the sentencing court.  See Rita, 127 S. Ct. at 2463.

mitigating details about the incident, Ayala's use of a baseball bat buttresses the reasonableness of the district court's conclusion. Similarly, although Ayala minimizes the circumstances that resulted in his second aggravated battery conviction, we cannot quarrel with the district court's rejection of Ayala's argument. During the incident resulting in his second conviction, Ayala fractured a woman's collarbone. "Context and the record make clear" the court's reasoning in rejecting Ayala's attempt to trivialize his two aggravated batteries. See Cereceres-Zavala, 499 F.3d at 1217 (quoting Rita, 127 S. Ct. at 2469). Because one of the basic sentencing objectives delineated in § 3553(a) is protecting the public, we cannot hold that the district court abused its discretion in determining that Ayala's prior criminal conduct is not inconsequential. See 18 U.S.C. § 3553(a)(2)(C).

Lastly, we turn a sympathetic eye to Ayala's family circumstances. We recognize that this sentence will cause his family great hardship. But the sentence imposed must "promote respect for the law," 18 U.S.C. § 3553(2)(A), and "afford adequate deterrence to criminal conduct," id. § 3553(2)(B). And the Sentencing Commission has directed that family ties and responsibilities should only impact the sentence impose in extraordinary circumstances. U.S.S.G. § 5H.1.6. While Ayala's sentence will undoubtedly burden his family, his situation, tragically enough, is all too ordinary. With this in mind, we defer to the district

court's conclusion that Ayala's special circumstances were not special enough that they require a sentence lower than that provided by the guidelines.[11]

## III.  Conclusion

Ayala adduced little to persuade us that his case is outside the heartland of cases of similarly situated defendants.  Because the sentencing court both complied with § 3553(c) and imposed a reasonable sentence, we AFFIRM.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge

---

[11]The family circumstances cases on which Ayala relies are readily distinguishable.  In those cases, the district court had exercised its discretion to vary downward because of the defendant's family circumstances.  See United States v. Gauvin, 173 F.3d 798, 806-08 (10th Cir. 1999) (affirming, under "abuse-of-discretion standard," district court's downward departure based on defendant's extraordinary family circumstances); United States v. Pena, 930 F.2d 1486, 1494 (10th Cir. 1991) (reviewing district court's decision to depart downwards based on "Defendant's unique family responsibility"). Here, however, Ayala must overcome the inertia inherently linked to the sentencing judge's decision not to vary downward.  Cf. United States v. Angel-Guzman, 506 F.3d 1007, 1019 (10th Cir. 2007) (explaining that cases with different procedural postures "cannot possibly be read to entitle later defendants in similar cases to a downward variance as a matter of right").  Ayala has not overcome the stasis associated with our deferential standard of review.