**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 14, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MINOR MICHAEL STILL also known
as Michael Still,

Defendant - Appellant.

No. 05-1317

D. Colo.

(D.C. No. 05-cr-014 REB)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **HOLLOWAY**, and **O'BRIEN**, Circuit Judges.

Minor Michael Still, a life-long, small-time con man, pled guilty to one of

four counts of falsely impersonating a federal employee. He challenges the

district court's upward variance from the sentencing guideline range of six to

twelve months to the statutory maximum sentence, thirty-six months. Exercising

jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM.

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

## I. Background

In June 2004, Still met Michael Pouland at Bricks, a bar located in Denver, Colorado. Still told Pouland he was employed by the Internal Revenue Service (IRS) in the Offer in Compromise Unit. Still offered to prepare Pouland's federal income tax returns for the years 2000, 2001 and 2002. When the returns were completed, the two met again at Bricks. Still told Pouland he owed $1,240.00 before interest and penalties but the IRS would accept $124.00 in satisfaction of his tax obligations. Pouland obtained a cashiers check, leaving the "pay to the order" section blank, as Still instructed. The two met again at the bar and Pouland gave Still the $124.00 check as well as a "processing fee" of $25.00 cash. Ever the consummate professional, Still gave Pouland a receipt from the "Internal Revenue Service, Denver Regional Office" and signed an IRS Form 656, "Offer in Compromise," as an "Authorized Internal Revenue Service Official."

At the same time, Still was running the same scam on another of Bricks' patrons, Isaac Lovato. Again conducting all his business at the bar, Still told Lovato he was an IRS employee and offered to help Lovato with his federal income tax liability. After reviewing Lovato's information, Still advised him he owed $3,890.00 in back taxes, interest and penalties, but the IRS would accept $389.00 as an "offer in compromise." Lovato paid Still $120.00 in cash in June 2004 and $269.00 in cash in July 2004. Once again, Still completed Lovato's transaction with an official IRS Form 656.

Satisfied with his success at Bricks, Still moved his tax consulting services to another bar, the Longhorn Tavern, also located in Denver. There, he repeated his lines, garnering a $50.00 "processing fee" from Robert Kay in December 2004. Another Longhorn customer, Luke McFarland, gave Still a $60.00 "processing fee" along with a $212.00 compromise payment in late 2004. Not surprisingly, the IRS has no record of any of Still's promised tax filings.

On January 4, 2005, the government indicted Still with four counts of a violation of 18 U.S.C. § 912, "falsely assum[ing] and pretend[ing] to be an officer and employee of the United States, namely, an employee of the Internal Revenue Service." On February 25, 2005, Still entered into a plea agreement with the government in which he agreed to plead guilty to Count One and provide restitution to all four of the victims in exchange for the government's dismissal of the remaining charges and a two point reduction for acceptance of responsibility.

The United States Probation Department prepared a presentence investigation report (PSR) based on the 2004 edition of the Advisory Guidelines Manual. The PSR computed Still's base offense level at six with a two-point reduction for acceptance of responsibility. *See* USSG §2J1.5; USSG §3E1.1(a). His criminal history computation included fifteen points for convictions over the past fifteen years. A three point enhancement was also added – two points because he was on parole supervision at the time he committed the offense and one point because the current offense occurred within two years of his release

from custody. *See* USSG §4A1.1(d), (e). With a total offense level of four and a criminal history category of VI, the recommended guideline range for Still's offense was six to twelve months imprisonment. However, the PSR also revealed Shaw's forty-year history of fraudulent activity. His convictions between 1965 and 1985, uncounted in his criminal history computation due to their age, revealed at least fourteen incidents of crimes such as felony theft, forged papers, stolen credit cards, impersonation and stolen motor vehicles. *See* USSG §4A1.2(e) (prior sentences will be counted if within fifteen year time frame and sentence imposed was imprisonment exceeding one year and one month; all other prior sentences within ten years will be counted).

On May 16, 2005, the government filed a Motion for Upward Departure pursuant to §4A1.3 of the sentencing guidelines. The government maintained Still's category VI criminal history did not reflect his life-long pattern of "defrauding, cheating, and impersonating others." (Vol. I, Tab 21 at 3). It argued:

> The only gaps in this behavior are periods when he has been in prison. That fact allows the Court to draw two conclusions: First, that the defendant is not only likely to recidivate upon release; it is certain that he will. Second, that society is safe from the defendant's predations only when he is behind bars.

(*Id.*) The government requested the district court impose the statutory maximum of three years imprisonment due to Still's uncounted criminal history and his

repeated failures to obey court orders regarding the terms and conditions of probation and parole.

Still responded by arguing his case was not "outside the heartland" of the sentencing guidelines. Moreover, he maintained the requested level of departure was unreasonable given "that it would result in a sentence equivalent to that of someone convicted of a fraud resulting in over $120,000 in losses, as compared to his $860.00." (Appellant's Br. at 4.) Still claimed the sentence should not be based on a mere tallying of his uncounted prior convictions. Rather, the court should take into account that his offenses were relatively minor and the guidelines considered them time-barred.

At the sentencing hearing on June 24, 2005, the parties relied on the arguments in their briefs to the district court.[1] In addition, Still argued a reasonable sentence would be a sentence within – though perhaps at the upper end of - the guideline range. The district court granted the government's motion for an upward departure and sentenced Still to thirty-six months in prison. The court concluded such sentence was reasonable considering the factors laid out in § 3553(a), as informed by the guidelines and the departure criteria. This timely appeal followed.

## II. Discussion

---

[1] Still's brief in response to the government's motion for an upward departure is not included in the record on appeal.

After *United States v. Booker*, we review a sentence to determine if it is reasonable. 543 U.S. 220, 261 (2005). In *United States v. Kristl*, we fashioned "a two-step approach" for post-*Booker* appellate review. 437 F.3d 1050, 1055 (10th Cir. 2006). First, we "determine whether the district court considered the applicable Guidelines range." *Id.* If so, and the sentence falls within that range, it "is presumptively reasonable," subject to rebuttal by the defendant "in light of the other sentencing factors laid out in § 3553(a)." *Id.* If the sentence does not fall within the guideline range, it is not entitled to a presumption of reasonableness on appeal. *See United States v. Calzada-Maravillas,* 443 F.3d 1301, 1309 (10th Cir. 2006) (citing *Kristl*, 437 F.3d at 1054). The reviewing court will consider whether the district court calculated the relevant guidelines range, including any applicable departure; considered the guidelines range along with other § 3553(a) factors; and imposed a reasonable sentence. *See United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir.), *overruled as to other issues*, *Rita v. United States*, 127 S. Ct. 2456 (2007), *cert. denied*, 127 S.Ct. 192 (2006). "[A]fter *Booker,* every sentence that a district court ultimately imposes must reflect its determination of what is reasonable in light of the same § 3553(a) factors, whether that sentence is within or outside the Guidelines range." *United States v. Sanchez-Juarez*, 446 F.3d 1109, 1114 (10th Cir. 2006). Reasonableness is required in two respects – "the length of the sentence, as well as the *method* by

which the sentence was calculated." *Kristl*, 437 F.3d at 1055 (emphasis in original).

Still does not challenge the district court's calculation of the guidelines range. Rather, he contends the sentence imposed is unreasonable because the degree of departure was greater than any reasonable pre-*Booker* methodology would have sanctioned. He also argues the district court did not adequately consider the § 3553(a) factors and the circumstances of his offense, but instead focused solely on his criminal history. We must determine whether the district court could reasonably have imposed the maximum statutory sentence, thirty-six months, based on the record before it. Although our ultimate decision is guided by the factors set forth in 18 U.S.C. § 3553(a), we consult and take the guidelines into account. At each step, "'we review legal questions de novo and we review any factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts.'" *United States v. Wolfe,* 435 F.3d 1289, 1295 (10th Cir. 2006) (quoting *United States v. Martinez*, 418 F.3d 1130, 1133 (10th Cir.), *cert. denied*, 546 U.S. 1081 (2005)).

A.    *Upward Departure From the Guidelines*

While guideline and non-guideline considerations will necessarily overlap, we consider four factors in reviewing a district court's upward departure from the guidelines:

(1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure; (3) whether the record sufficiently supports the factual basis underlying the departure; and (4) whether the degree of departure is reasonable [pursuant to a methodology associated with guideline factors].

*United States v. Walker*, 284 F.3d 1169, 1171 (10th Cir. 2002).[2]  As to the first factor, the applicable guideline policy statement, found in USSG §4A1.3, provides that upward departures may be based upon the inadequacy of the criminal history category:

> (1)    STANDARD FOR UPWARD DEPARTURES.  If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted.

Still concedes it was proper for the court to consider the length of his criminal history.  As to the second factor, Still no longer argues his history of recidivism fails to take his case out of the guidelines "heartland" or is insufficient to provide reliable information supporting a departure.  As to the third factor, the type of information which may be considered reliable includes, but is not limited to, information concerning prior sentences of substantially more than one year imposed as a result of independent crimes committed on different occasions.

---

[2]  The government suggests we modify this test to reflect the "new vitality" of the § 3553(a) factors post-*Booker*.  (Appellee's Br. at 12.)  We need not decide if the wording of this test requires post-*Booker* modification as Still cannot show error under the guidelines or § 3553(a).

USSG §4A1.3(a)(2). The record is replete with reliable information which supports the factual basis underlying the departure.

Thus, we proceed to the fourth factor, and consider whether the degree of departure was reasonable. As we stated in *United States v. Proffit*,

> The district court is required to precisely lay out its reasoning and analysis as to why it is selecting a particular degree of departure. This reasoning and analysis must give us reasonable indicia that the sentence the district court pronounces is proportional to the crime committed. The district court accomplishes this task by using any reasonable methodology hitched to the Sentencing Guidelines to justify the reasonableness of the departure.

304 F.3d 1001, 1012 (10th Cir. 2002) (internal citations and quotations omitted).

Where the district court determines a criminal history category VI does not reflect the seriousness of the defendant's criminal history or his proclivity for recidivism, USSG §4A1.3(4)(B) suggests "the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." As the government noted in its brief in support of its motion for an upward departure, if Still's uncounted "convictions were assigned points, [he] would have thirty-four additional criminal history points for a total of fifty-two." (Vol. I, Doc. 21 at 4.) The government suggested (and the probation department concurred) that the court apply a total offense level of twelve rather than four, resulting in a sentencing range of thirty to thirty-seven months imprisonment. The government further urged the court to sentence Still at the statutory maximum

under 18 U.S.C. § 912, arguing "[s]ociety should be protected from the defendant for as long as § 912 allows." (*Id.* at 6.)  While the district court did not expressly state the reason for an upward departure from the guideline offense level of four to twelve, it specifically adopted the government's arguments.[3] (Vol. II at 13.)

Still argues this departure would not be sanctioned under pre-*Booker* precedent because it is unsupported by the record.  However, even adopting the methodology Still suggests, assigning one offense level for every four uncounted criminal history points above fifteen or sixteen, the total increase would be eight offense levels,[4] bringing Still to the offense level twelve he now rejects. (Appellant's Br. at 21, n.1.)  Thus, there is no question that the district's court's decision utilized "a[ ] reasonable methodology hitched to the Sentencing Guidelines to justify the reasonableness of the departure." *Profitt*, 304 F.3d at 1012; *see also United States v. Hurlich*, 348 F.3d 1219, 1222 (10th Cir. 2003) ("The district court may use any reasonable methodology hitched to the Sentencing Guidelines to justify the reasonableness of a departure, which includes

---

[3]  The Probation Department filed an addendum to the PSR in support of the government's assessment in its Motion for Upward Departure.  It stated: "given the defendant's criminal history and the nature of his offenses, [ ] a three year term of imprisonment is reasonable." (R. Vol. III at A-1.)

[4]  Still had seven uncounted convictions valued at three points each, five uncounted convictions valued at two points each and three uncounted convictions valued at one point each, for a total of thirty-four uncounted criminal history points.  *See* USSG § 4A1.1(a),(b)&(c). (R. Vol. III at 6-10.)

using extrapolation from or analogy to the Guidelines." (quotation marks and citations omitted). Thus, we conclude that the district court correctly consulted the guidelines and conducted the proper departure analysis.

B.     *Reasonableness Under the § 3553(a) Factors*

Next, we must consider whether the district court adequately considered the factors listed in 18 U.S.C. § 3553(a).[5] Under *Booker*, the ultimate question on review is whether the sentence is reasonable under these factors. *Sanchez-Juarez*, 446 F.3d at 1114.

---

[5] 18 U.S.C. § 3553(a) provides, in relevant part:

(a) Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

  (2) the need for the sentence imposed--

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

Still claims the district court ignored "many factors weighing against a departure." (Appellant's Br. at 13.) More specifically, he concedes his criminal history is long, but claims the district court failed to consider the relatively benign nature of his offenses. He argues his crimes have "barely deviated" over time, never escalating from "petty thefts and cons" for "small amounts of money." He also points out his crimes are without the presence of violence or drugs, the hallmarks of a "serious offense." (Id. at 14.) Citing to *United States v. Walker*, he contends the court erred because it looked only at the quantity, not the quality of criminal history. 284 F.3d 1169, 1173 (10th Cir. 2002).

In *Walker*, we questioned reliance solely on the sheer number of a defendant's past convictions when structuring a departure from criminal history category VI because it could "create a de facto criminal history category higher than category VI." *Id.* In this case, however, the district court looked not only to the length of Still's criminal career, but also to his response to the legal system's efforts to constrain his criminal behavior. It stated:

> In my 30 years of practicing law, the last 17 on the bench, I cannot recall a criminal record more lengthy than this one, and any sentence short of the statutory maximum would in my view depreciate the seriousness of this offense, considered in context under my respect for the law, and certainly provide inadequate deterrence to the public under the law for this particular defendant, thus, in considering and formulating a sentence first under the now advisory sentencing guidelines, I am convinced that I should depart upward, and that I should depart upward to facilitate the imposition of the statutory maximum of 36 months or three years as urged and recommended by the government, now as supported by the probation department.

> Independently, as I consider sentence, under the sentencing factors at
> 18 U.S.C. section 3553(a)(1) through (7), I reach a similar
> conclusion. That a sentence to the statutory maximum is the only
> sentence that will reconcile and satiate those sentencing factors
> considered individually and collectively . . . .
> The defendant has, by choice, led a life of crime, interrupted only by
> intermittent incarceration as his criminal activity was detected and
> prosecuted. I am convinced beyond any doubt that Mr. Still will recidivate
> after release . . . and during a term of supervised release and thereafter.
> The public is owed the best the court can provide in these circumstances,
> and that is the maximum sentence or period of potential deterrence by law,
> in this case 36 months or three years.

While Still attempts to downplay his criminal past, his constant repetition of similar offenses, often while on parole or supervised release from a previous conviction, is truly extraordinary. Such a pattern can justify an upward variance, even though the offenses were not violent. *See Proffit*, 304 F.3d at 1011-12; *United States v. Akers*, 215 F.3d 1089,1104-05 (10th Cir. 2000); *United States v. Bernhardt*, 905 F.2d 343, 344-45 (10th Cir. 1990).

The district court found Still's extraordinary criminal history warranted the statutory maximum sentence because a shorter sentence would "depreciate the seriousness of the offense . . . in the context of this offender." The accuracy of this statement is established by the same facts underpinning the record support for other statutory factors. We begin with Still's life-long commitment to the criminal deception of others, despite his numerous convictions and resulting sentences. Over the past forty years, Still has not been deterred by sentences of five and six years, immediately returning to his previous lifestyle after being released. Still has spent almost eleven of the last fifteen years in prison.

Nonetheless, he managed to accrue six felony convictions in his four years of freedom. We also consider the numerous occasions Still re-offended while on probation and supervised release, as well as his escapes from detention outside prison walls. *See United States v. Contreras-Martinez*, 409 F.3d 1236, 1241 (10th Cir. 2005) ("The violation of a condition of supervised release is a breach of trust . . . ").

These facts underscore Still's complete disdain for the law and suggest a shorter sentence would provide inadequate deterrence. These facts also support the determination that a thirty-six month sentence would allow the public protection for as long as possible. Each of these considerations is proper under § 3553(a)(2) and the district court's decision to sentence Still to the statutory maximum of three years was both reasoned and reasonable.

B.    *Discrepancy Between the Guideline Range and the Sentence Imposed*

In his final argument, Still maintains his sentence must be considered in terms of the proportion of the variance, in his case, an increase of over three hundred percent (twelve months to thirty-six months). Indulging Still's insistence that a percentage approach to the degree of his variance is appropriate, the district court did not abuse its discretion. "'[W]hen a district court imposes a sentence outside the guidelines, the level of scrutiny we apply in reviewing the sentence depends on the 'comparative difference' between the applicable range under the advisory Guidelines and the actual sentence imposed.'" *United States v. Hildreth,*

485 F.3d 1120, 1127 (10th Cir. 2007) (quoting *United States v. Cage*, 451 F.3d

585, 594 (10th Cir. 2006)). We look to the percentage of divergence as well as

the "absolute number of months above or below the Guidelines range." *United

States v. Valtierra-Rojas,* 468 F.3d 1235, 1240 (10th Cir.2006), *cert. denied,* 127

S.Ct. 2935 (2007). The detail with which the court must explain its decision to

vary from the guideline range is relative to the degree of the discrepancy between

the sentence and the advisory range. *Cage*, 451 F.3d at 594 ("Had the

comparative difference been smaller but still outside the Guidelines range, the

district court's decision would not have been presumptively reasonable but an

appropriate justification would suffice for this court to determine that it is

reasonable.")[6]

We have often approved sentences which were several times higher than the

applicable guideline range based on repeated similar criminal conduct. *Hurlich*,

348 F.3d at 1220-23 (departure from twenty-seven to thirty-three months to a

sentence of seventy-eight months); *Bernhardt*, 905 F.2d at 343, 346 (departure

from range of eighteen to twenty-four months to a sentence of sixty months);

*United States v. Smith*, 417 F.3d 483 (5th Cir. 2005) (departure from range of

thirty-three to forty-one months to a sentence of 120 months based on twenty-year

---

[6] The Supreme Court has recognized "a number of circuits adhere to the proposition that the strength of the justification needed to sustain an outside-Guidelines sentence varies in proportion to the degree of the variance." *Rita*, 127 S.Ct. at 2467. The Court will consider this approach next Term in *United States v. Gall,* No. 06-7949.

history of "con-man"-type offenses.), *cert. denied,* 546 U.S. 1025 (2005).  In addition, we have affirmed variances of more than twenty-four months.  *Hurlich, supra*.  For the reasons previously stated, the district court's explanation was sufficient and the sentence reasonable.

**AFFIRMED.**

FOR THE COURT:

Terrence L. O'Brien
United States Circuit Judge